## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RALPH EDWARD FITHEN,                          Case No. 1:15-cv-213
    Plaintiff,                                Dlott, J.
                                              Litkovitz, M.J.
  vs.

COMMISSIONER OF                               **REPORT AND**
SOCIAL SECURITY,                              **RECOMMENDATION**
    Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement

of Errors (Doc. 14), the Commissioner's response in opposition (Doc. 21), and plaintiff's reply

(Doc. 22).

## I. Procedural Background

Plaintiff protectively filed his application for DIB in February 2012, alleging disability

since September 30, 2008, due to degenerative disc disease and depression. The application was

denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted

a *de novo* hearing before administrative law judge (ALJ) Vincent Misenti. Plaintiff and a

vocational expert (VE) appeared and testified at the ALJ hearing. On November 22, 2013, the

ALJ issued a decision denying plaintiff's DIB application. Plaintiff's request for review by the

Appeals Council was denied, making the decision of the ALJ the final administrative decision of

the Commissioner.

1

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th

Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff met] the insured status requirements of the Social Security Act
> through December 31, 2013.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since September
> 30, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: lumbar degenerative disc
> disease and affective disorder (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that
> meets or medically equals the severity of one of the listed impairments in 20 CFR
> Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5. After careful consideration of the entire record, [the ALJ] finds that the
> [plaintiff] has the residual functional capacity [(RFC)] to perform light work as
> defined in 20 CFR 404.1567(b) with the following: He can occasionally climb
> ramps and stairs, balance, stoop, kneel, crouch and crawl; no climbing ropes,
> ladders or scaffolds; no working around unprotected heights or moving
> mechanical parts; no commercial driving; and no concentrated exposure to fumes,
> dusts, gases, odors, poorly vented areas and chemicals. He is capable and limited
> to understanding, remembering and carrying out simple, routine and repetitive
> tasks; not able to perform at a production rate pace, but can perform goal oriented
> work; is capable of using judgment limited to simple work-related decisions; is
> capable of social interaction with supervisors, coworkers, and the public
> occasionally; and is limited to tolerating few changes in a routine work setting,
> defined as working in a static environment.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[1]

7. The [plaintiff] was born [in] . . . 1960 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The [plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from September 30, 2008, through the date of [the ALJ's] decision (20 CFR 404.1520(g)).

(Tr. 17-28).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[1]Plaintiff's past relevant work was as a heating and air conditioning servicer/installer, a medium, skilled position which plaintiff performed at the medium to heavy exertional level, and heating and air conditioning mechanic helper, a heavy, skilled position which plaintiff performed at the light exertional level. (Tr. 27).

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light occupations such as housekeeping cleaner (385,000 jobs nationally) and stock clerk (215,000 jobs nationally). (Tr. 28).

4

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

Plaintiff alleges that the ALJ erred by: (1) failing to properly weigh the psychological opinion evidence; (2) failing to consider the results of a functional capacity evaluation (FCE) performed by a physical therapist in September 2011; and (3) finding that plaintiff did not have an impairment or combination of impairments that met or medically equaled Listing 1.04(A) for disorders of the spine.

## 1. Weight to the psychological opinion evidence

Plaintiff alleges that the ALJ erred by failing to give sufficient weight to the April and May 2012 opinions of his treating psychologist, Dr. George Lester, Psy.D. (Doc. 14 at 6-12; Doc. 22 at 1-3).

It is well-established that the findings and opinions of treating physicians (and psychologists) are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what weight to give the opinion. *See*

6

*Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and

extent of the treatment relationship and the frequency of examination. 20 C.F.R. §

404.1527(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical

specialty of the source, how well-supported by evidence the opinion is, how consistent the

opinion is with the record as a whole, and other factors which tend to support or contradict the

opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always

give good reasons in [the] notice of determination or decision for the weight [given a] treating

source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also* 20 C.F.R. §

404.1527(c)(2); *Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight

afforded the treating physician opinion). Those reasons must be "supported by the evidence in

the case record, and must be sufficiently specific to make clear to any subsequent reviewers the

weight the adjudicator gave to the treating source's medical opinion and the reasons for that

weight." *Cole*, 661 F.3d at 937 (citing SSR 96-2p). This procedural requirement "ensures that

the ALJ applies the treating physician rule and permits meaningful review of the ALJ's

application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

In his decision, the ALJ evaluated two opinions issued by plaintiff's treating

psychologist, Dr. Lester. Dr. Lester completed a medical questionnaire dated April 30, 2012.

(Tr. 463-465). Dr. Lester reported that he had first seen plaintiff on August 2, 2010, and had last

seen him on April 26, 2012. (Tr. 466). Dr. Lester reported that plaintiff was "oriented x 3," he

was focused on his pain, and his mood was "improved on Cymbalta but stress tolerance remains

brittle." (Tr. 464). Dr. Lester assessed plaintiff's IQ as "borderline" and he reported that

7

plaintiff had difficulties with pace "due to pain." (*Id.*). Dr. Lester described plaintiff as

"[s]ometimes confused, overwhelmed [and] anxious," which affected his concentration, and at

times indecisive. (*Id.*). He reported that pain affected plaintiff's ability to carry out chores such

as "weed-eating" and "walking distances," and that sleep remained a problem at times. (*Id.*).

Dr. Lester reported that plaintiff had "very few interests," he "[s]ocializes with family," and he

maintained his hygiene. (*Id.*). Dr. Lester reported that plaintiff was "anxious [and] eager to

please." (*Id.*). Dr. Lester stated that plaintiff "was severely depressed up until a few months

ago- tearful, confused, agitated." (*Id.*). He reported that pain management had "improved [his]

quality of life but remains limited." (*Id.*). Dr. Lester reported that plaintiff's symptoms had

"definitely improved" over the course of two years and his ability to tolerate stress was

"[b]etter," but his stress tolerance remained "brittle," "weak," and "fair to poor." (Tr. 464-65).

Dr. Lester reported that at times plaintiff was overwhelmed and confused and asked for much

guidance and support to make seemingly obvious decisions. (Tr. 465).

Dr. Lester completed a Medical Source Statement two weeks later on May 14, 2012. (Tr.

503-07). He diagnosed plaintiff with a depressive disorder and assigned him a GAF score of 50-

55.[3] (Tr. 503). Dr. Lester reported that he had seen plaintiff one to two times per month since

August 2, 2010. (*Id.*). He reported that plaintiff recalled 3 of 5 objects after 5 minutes; he was

"oriented x 3"; and his concentration was affected by pain, depression and anxiety. (Tr.

---

[3] GAF is a clinician's subjective rating, on a scale of 0 to 100, of an individual's overall psychological functioning. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n. 7 (6th Cir. 2006). *The Diagnostic and Statistical Manual of Mental Disorders* categorizes individuals with scores of 41 to 50 as having "serious" symptoms. *DSM-IV* at 34. A GAF of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

504). He opined that plaintiff's impairments or treatment would cause him to be absent from work more than 3 times each month. (*Id.*). Dr. Lester answered "no" to the general question of whether plaintiff's ability to understand, remember and carry out instructions was affected by the impairment. (Tr. 505). Although instructed by the form to skip the next portion of the question if the answer to the first part was "no," Dr. Lester answered the remainder of the question which asked him to rate the individual's degree of limitation in this area. Dr. Lester rated plaintiff's degree of impairment as follows:

- no/mild to moderate loss of ability to remember locations and work-like procedures

- no/mild loss of ability to understand and remember very short, simple instructions

- no/mild to moderate loss of ability to carry out very short, simple instructions

- moderate loss of ability to understand and remember detailed instructions

- marked loss of ability to carry out detailed instructions

- moderate loss of ability to maintain attention and concentration for extended periods (2 hour segments)

- marked loss of ability to maintain regular attendance and be punctual

- moderate to marked loss of ability to sustain an ordinary routine without special supervision

- moderate loss of ability to deal with the stress of semi-skilled and skilled work

- moderate loss of ability to work in coordination with or proximity to others without being unduly distracted

- no/mild loss of ability to make simple work-related decisions

- moderate to marked loss of ability to complete a normal workday or workweek without interruptions from psychologically based symptoms

9

- marked loss of ability to perform at a consistent pace without an unreasonable number and length of rest periods

Dr. Lester also reported that plaintiff's ability to respond appropriately to supervision, coworkers and work pressure in a work setting was affected by plaintiff's impairment as follows:

- no/mild loss of ability to interact appropriately with the public and ask simple questions or request assistance

- no/mild loss of ability to maintain socially appropriate behavior

- moderate loss of ability to accept instructions and respond appropriately to criticism from supervisors

- moderate loss of ability to respond appropriately to changes in a routine work setting

- moderate loss of ability to get along with coworkers and peers without unduly distracting them or exhibiting behavioral extremes

- moderate loss of ability to set realistic goals or make plans independently of others

(Tr. 505-06). Dr. Lester opined that plaintiff had slight restriction of activities of daily living; no difficulties in maintaining social functioning; frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner; and one or two episodes of deterioration or decompensation in a work or work-like setting causing the individual to withdraw from the setting or experience an exacerbation of symptoms. (Tr. 506-07).

The ALJ accorded "great weight" to Dr. Lester's April 2012 opinion that plaintiff had been "severely depressed up until a few months ago," pain management had improved his quality of life, and his symptoms had improved but his stress tolerance "remain[ed] weak." (Tr. 24). The ALJ found that as plaintiff's treating source for his mental impairment, Dr. Lester was

10

"familiar with [plaintiff's] condition and limitations." (*Id.*). The ALJ assigned "little weight" to Dr. Lester's assessment issued on May 14, 2012. (Tr. 25). The ALJ found that Dr. Lester's assessment was internally contradictory and was inconsistent with Dr. Lester's opinion of two weeks earlier that plaintiff "was improving." (*Id.*). In addition to these two assessments, the ALJ noted that Dr. Lester had completed several workers compensation forms in which he stated that plaintiff had been disabled due to his work-related injury/disease since May 2010 and provided return to work dates. (*Id.*, citing Tr. 478, 479, 500). The ALJ gave the opinion stated in those forms "little weight" because Dr. Lester provided no functional limitations. (*Id.*).

Plaintiff alleges that the ALJ's decision to give less than "great weight" to Dr. Lester's May 2012 opinion is not substantially supported. Plaintiff alleges that Dr. Lester was equally familiar with plaintiff's psychological condition and the limitations it imposed in April and May 2012, but the ALJ improperly credited only the April 2012 opinion on this ground; Dr. Lester's May 2012 opinion is consistent with his treatment notes; and Dr. Lester's opinion is consistent with the opinion of one-time examining psychologists Dr. Roberto Madrigal, Ph.D. (Tr. 437-40) and Dr. Kennth Manges, Ph.D. (Tr. 518-23).

The ALJ's decision to give less than controlling weight to the May 2012 opinion of plaintiff's treating psychologist is not supported by substantial evidence. The ALJ did not apply the treating physician rule to determine whether Dr. Lester's opinion was entitled to controlling weight. First, the ALJ did not consider whether Dr. Lester's opinion was supported by his treatment notes and findings. *See Gayheart*, 710 F.3d at 376. Those treatment notes generated over a two-year period consistently report moderate to severe symptoms of depression (Tr. 473, 477, 480, 482, 486, 498); concentration problems (Tr. 473, 477, 484, 485, 486); sleep problems

11

(Tr. 473, 477, 480, 484, 485, 486, 499); memory difficulties (Tr. 473, 477, 484, 485, 486); feelings of hopelessness/helplessness (Tr. 473, 477, 484, 486); feelings of being exhausted/overwhelmed (Tr. 473, 477, 480, 482, 484, 485, 486, 498); chronic worry (Tr. 473, 477, 480, 483, 484, 485, 486, 498, 499); feeling apprehensive/vigilant (Tr. 480, 482, 498); and ruminations (Tr. 499).  The treatment notes also consistently report mild to severe panic attacks (Tr. 480, 482, 483, 498, 499) and crying spells (Tr. 473, 483, 499).  The ALJ gave no consideration to Dr. Lester's treatment notes and the symptoms they repeatedly documented when evaluating the weight to give his opinion.

The second prong of the treating physician rule requires the ALJ to evaluate whether the treating provider's opinion "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)).  Dr. Lester's findings appear to be consistent with many of the findings and reports of the examining psychologists of record who evaluated plaintiff on behalf of the Bureau of Workers Compensation: Dr. Michael A. Murphy, Ph.D., Dr. Madrigal, and Dr. Manges.  *Gayheart*, 710 F.3d at 376.  Dr. Murphy evaluated plaintiff in June 2011.  (Tr. 339-348).  Dr. Murphy conducted a clinical interview and mental status examination, obtained a psychosocial history, administered the Millon Clinical Multiaxial Inventory-III (MCMI-III), and performed a file review.  Dr. Murphy opined that plaintiff was approaching maximum medical improvement and should be referred to vocational rehabilitation, continue treatment, and be re-examined for extent of disability in 90-120 days.

12

(Tr. 347). Dr. Murphy further opined that a functional capacities exam should be considered. (*Id.*). He listed plaintiff's functional limitations as dysphoric mood and reduced concentration. (*Id.*).

Dr. Madrigal evaluated plaintiff on April 2, 2012. (Tr. 437-40). Dr. Madrigal reviewed records which spanned a nearly three-year period consisting of numerous psychological evaluation and medical examination reports and a psychological treatment summary prepared by Dr. Lester. (Tr. 437). Dr. Madrigal administered a Minnesota Multiphasic Personality Inventory-2 (MMPI-2), conducted a clinical interview, and obtained a psychosocial history. (Tr. 439). Dr. Madrigal reported that plaintiff's memory and concentration were "poor." (Tr. 439). He opined that the results of his evaluation indicated "the presence of 'significant psychopathology.'" (*Id.*). Dr. Madrigal opined that while plaintiff had shown "good response to treatment," he had not reached maximum medical improvement for his allowed psychological condition; considering only his allowed psychological conditions, he could not return to his previous employment position or to gainful employment; vocational rehabilitation was not recommended until his medical condition stabilized; and current treatment was appropriate and necessary and should continue for at least six more months, after which a reexamination should be considered. (Tr. 439-40). Dr. Madrigal diagnosed plaintiff with Depressive Disorder NOS and assigned him a GAF of 70.[4] Dr. Madrigal concluded that plaintiff could not return to his previous position of employment or return to gainful employment based on his allowed psychological condition. (Tr. 439-40).

---

[4] A GAF score of 61 to 70 indicates "[s]ome mild symptoms (*e.g.,* depressed mood and mild insomnia)" or "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well." *DSM-IV* at 34.

Dr. Manges reviewed the psychological evaluation reports and treatment summaries, interviewed plaintiff, and administered an MCMI-III on August 9, 2012. (Tr. 518-23). Dr. Manges opined that plaintiff had reached maximum medical improvement (MMI) with respect to his depressive disorder. (Tr. 521). He rated plaintiff as having a "65% impairment: compatible with all useful functioning" in the areas of activities of daily living, social functioning, concentration, and adaptation, and he opined that these areas of functioning were "moderately affected" overall by plaintiff's workplace injury. (Tr. 521-22). Dr. Manges concluded that plaintiff had a 65% whole person impairment as a result of his injury and that he was incapable of work based solely on his allowed psychological conditions without consideration of his age, education or work training. (Tr. 522-23).

The ALJ failed to consider whether Dr. Lester's opinion was consistent with the examining psychologists' findings and opinions as required under the treating physician rule. This was error. *See Gayheart*, 710 F.3d at 376.

Even assuming, *arguendo*, that the ALJ's decision to afford less than controlling weight to Dr. Lester's opinion is substantially supported, the ALJ's decision falls far short of the Agency's own procedural requirements. A finding that a treating source medical opinion is not entitled to "controlling weight" does not mean that the opinion should be rejected. Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4. "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Id.*; *Blakley*, 581 F.3d at 408. The ALJ did not consider the regulatory factors in deciding the weight to afford Dr. Lester's May 2012 opinion, including the length, nature and extent of the treatment relationship; the frequency of examination; and whether Dr. Lester's report was

14

consistent with the record as a whole. Instead, the ALJ discounted the May 2012 opinion on two grounds: (1) it was self-contradictory, and (2) it was at odds with Dr. Lester's April 2012 opinion that plaintiff "was improving." (Tr. 25). These reasons do not provide substantial support for the ALJ's decision. The inconsistency in Dr. Lester's report emphasized by the ALJ in his written decision appears to be the result of a mistake by Dr. Lester in completing the May 2012 medical form.[5] As noted earlier, Dr. Lester answered "no" to the general question of whether plaintiff's ability to understand, remember and carry out instructions was affected by his mental impairment. (Tr. 505). However, Dr. Lester did not skip the remainder of the question as the form instructs the provider to do if he has checked the "no" response. (*Id.*). Instead, Dr. Lester went on to rate plaintiff's specific degrees of loss of ability to understand, remember and carry out instructions, which he indicated ranged from no/mild to marked. (*Id.*). It therefore appears that Dr. Lester's "no" answer was a clerical error. The ALJ did not explain the other contradictions he discerned in the report or their significance to the disability analysis.

The only other reason the ALJ gave for discounting Dr. Lester's May 2012 opinion - inconsistency with the April 2012 opinion noting improvement in plaintiff's condition - is likewise unsupported. The Social Security regulations recognize that a claimant's level of functioning may vary considerably over time and that longitudinal evidence is required in the case of mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(2). "Improvement" in the level of mental functioning is a relative concept and is dependent on the base level from which the improvement is measured:

---

[5] The ALJ noted that Dr. Lester opined that plaintiff's "ability to understand, remember and carry out instructions was NOT affected by his impairment. . . ." (Tr. 24).

15

> Even if [a doctor's] use of the word "better" referred to Plaintiff's mood, this
> word did not provide the ALJ with substantial evidence from which to find that
> Plaintiff's mental impairment had subsided.  The ALJ made no inquiry into the
> degree of improvement, or from what baseline Plaintiff had improved.  Under the
> ALJ's logic, any improvement in one's mood, regardless of how small and from
> what level the individual improved, would defeat a claim of mental impairment.
> This cannot be so.

*Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 494 (6th Cir. 2011).

The ALJ here applied the reasoning which the Sixth Circuit rejected in *Boulis-Gasche*.

The ALJ discounted Dr. Lester's May 2012 assessment based on improvement in plaintiff's

mental condition noted in the April 2012 report.  (Tr. 25).  However, the ALJ did not cite any

findings or evidence to show the baseline from which plaintiff's condition had improved or the

degree of improvement.  (*Id.*).  The degree of improvement cannot be gauged from Dr. Lester's

report.  Dr. Lester assessed no functional limitations in the April 2012 questionnaire, and his

report provides no other means for measuring the degree of improvement.  (Tr. 459-61).  Dr.

Lester generally reported in April 2012 that plaintiff's mood was "improved" on Cymbalta,

plaintiff had been "severely depressed" until a few months earlier, pain management had

"improved" plaintiff's quality of life, and his symptoms had "[d]efinitely improved" with

treatment.  (Tr. 460-61).  However, Dr. Lester further indicated that while plaintiff's condition

had improved, plaintiff continued to experience significant mental health symptoms.  (*Id.*).  Dr.

Lester reported that plaintiff's stress tolerance remained "brittle," "fair to poor," and "weak," and

that issues with feeling confused, overwhelmed, and anxious affected his concentration.  (*Id.*).

The ALJ did not explain in what way these findings were inconsistent with the May 2012

assessment which, in contrast to the April 2012 questionnaire, imposed specific functional

limitations.  Although Dr. Lester assessed plaintiff's depression as less severe in April 2012 than

16

it had been a few months earlier, Dr. Lester's finding of improvement in April 2012 does not support the ALJ's finding that plaintiff's depression was not sufficiently severe to impose the limitations assessed by Dr. Lester in May 2012 and his decision to discount the May 2012 assessment on that ground.

Finally, the ALJ's reasons for the weight he assigned Dr. Lester's April and May 2012 assessments are not consistent. Dr. Lester issued his April and May 2012 opinions less than one month apart. The ALJ gave "great weight" to Dr. Lester's April 2012 opinion on the sole ground that as plaintiff's treating psychologist, Dr. Lester was familiar with plaintiff's "condition and limitations." (Tr. 24). Yet, despite the continued relevance of this factor, the ALJ gave no consideration to Dr. Lester's treating relationship with plaintiff when weighing the May 2012 evaluation.

Thus, the reasons the ALJ gave for discounting Dr. Lester's opinion are not "supported by the evidence in the case record, and [are not] sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (citing SSR 96-2p, 1996 WL 374188, at *5). The ALJ did not apply the treating physician rule in a manner that permits meaningful review of the ALJ's application of the rule. *Wilson,* 378 F.3d at 544.

Instead of crediting Dr. Lester's May 2012 assessment, the ALJ adopted the assessments of state agency reviewing psychologists Dr. Vickie Warren, Ph.D., who reviewed the record on June 13, 2012 (Tr. 78-82, 84-86), and Dr. Mel Zwissler, Ph.D., who affirmed Dr. Warren's assessment on reconsideration on September 11, 2012 (Tr. 96-97, 100-02). Dr. Warren opined that plaintiff had mild restrictions in his activities of daily living; moderate difficulties in

17

maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation of extended duration. (Tr. 80). Dr. Warren found that plaintiff's allegations related to his psychological symptoms were generally supported by the medical evidence of record but noted that his mental status findings had reportedly improved with pain management treatment. (Tr. 81). Dr. Warren concluded that plaintiff was capable of at least 3-4 step activity based on his past work history; work activity that does not require close attention to detail; work activity in settings where social demands are no more than superficial in nature; and no work in settings where change occurs frequently. (Tr. 84-86). The ALJ gave "great weight" to the opinions of the reviewing psychologists because: (1) they "reviewed the entire record at that time," and (2) they are knowledgeable about the disability program and its rules and requirements. (Tr. 26).

The ALJ's decision to credit the state agency psychologists' opinions over those of the treating and examining psychologists was not, in itself, reversible error. *Blakley*, 581 F.3d at 409. "In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources. Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). One such circumstance may occur, for example, when the 'State agency medical . . . consultant's opinion is based on a review of a complete case record that . . . provides more detailed and comprehensive information than what was available to the individual's treating source.'" *Id*. Such circumstances are not present here. Dr. Lester treated plaintiff beginning August 2010 and saw him just days before completing his April 2012 assessment. (Tr. 466). Like the reviewing psychologists, the one-time examining psychologists also reviewed the entire record available as of the date of their examinations and, in the case of

18

Dr. Manges, had a more extensive record available to review than did Dr. Warren. (Tr. 518-23). Thus, the ALJ did not reasonably credit the state agency psychologists' opinions on the ground they reviewed the record in connection with their assessments. The only other reason the ALJ gave for crediting the reviewing psychologists' opinions - familiarity with the Social Security rules and regulations - is one factor the ALJ may consider in evaluating a medical source opinion but it is not a sufficient basis for crediting a reviewing source's opinion. The ALJ is bound to consider the remaining regulatory factors. *See* 20 C.F.R. § 404.1527(e)(ii) ("When an [ALJ] considers findings of a State agency medical or psychological consultant or other program . . . psychologist . . ., the [ALJ] will evaluate the findings using the relevant factors in paragraphs (a) through (d) of this section, such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions. Unless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency . . . psychological consultant or other program . . . psychologist . . ., as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us."). The ALJ erroneously failed to balance the regulatory factors in deciding the weight to afford the reviewing psychologists' opinions in this case.

The ALJ erred by discounting the opinions of plaintiff's treating psychologist, Dr. Lester, and instead crediting the opinions of the non-examining state agency psychologists on grounds that do not substantially support his decision. Plaintiff's first assignment of error should be sustained.

19

**2. The ALJ's failure to consider the physical therapist's Functional Capacity Evaluation (FCE)**

Plaintiff alleges that the ALJ erred by failing to consider an FCE completed by physical therapist Suzie Dorma in September 2011. (Doc. 14 at 12-14, citing Tr. 555-59; Doc. 22 at 3-4). In support of his argument, plaintiff relies on *Bowen*, 478 F.3d 742, which held that the ALJ's failure to mention the RFC opinion of a treating psychologist violated 20 C.F.R. § 404.1527(c)(2)[6] and was not harmless error. Plaintiff alleges that the ALJ should have given this evaluation limiting him to sedentary work substantial weight. Plaintiff alleges that had the ALJ properly credited the FCE, he would necessarily be found disabled under Grid Rule 201.14 as of October 15, 2010, the date he turned 50 years old.

Defendant responds that the ALJ was not required to discuss all of the evidence submitted, and the ALJ's failure to cite the FCE does not indicate that the ALJ failed to consider the evidence. (Doc. 21 at 11-14, citing *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)). Defendant further argues that any error the ALJ committed by failing to consider the evidence was harmless because a physical therapist is not an acceptable medical source whose opinion is entitled to controlling weight under the regulations; the ALJ discussed in detail the results of physical assessments performed around the time of the FCE by plaintiff's treating pain specialist, Dr. Mitchel E. Simons, M.D.; and the ALJ's physical RFC finding is supported by the state agency reviewing physicians' assessments.

In determining whether the ALJ's decision is supported by substantial evidence, the administrative record must be considered as a whole. *Morgan v. Astrue*, No. 2:08-cv-1108, 2010

---

[6] This provision was formerly found at § 404.1527(d)(2).

20

WL 547489, at *2 (S.D. Ohio Feb. 11, 2010) (citing *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 536 (6th Cir. 1981)). "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons,* 114 F. App'x at 733 (quoting *Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir. 2000)). *But see* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").

Plaintiff has not shown that the ALJ erred by failing to discuss the physical therapist's FCE. Physical therapists are not "acceptable medical sources" under the Social Security regulations. *See* 20 C.F.R. § 404.1513(a); SSR 06-03p, 2006 WL 2329939, at *2. Only an "acceptable medical source" can give a medical opinion. SSR 06-03p, 2006 WL 2329939, at *2. Because a physical therapist is not considered an "acceptable medical source" under the regulations, an ALJ is not required to give any special deference to a physical therapist's report. *Nierzwick v. Comm'r of Soc. Sec.,* 7 F. App'x 358, 363 (6th Cir. 2001) (physical therapist's report not afforded significant weight because therapist not recognized as an acceptable medical source); *Jamison v. Comm'r,* No. 1:07-cv-152, 2008 WL 2795740, at *10 (S.D. Ohio July 18, 2008) (same)). Thus, the ALJ was not required to give any special deference or weight to Ms. Dorma's FCE. The ALJ did not err by omitting mention of the FCE in the written decision. Plaintiff's second assignment of error should be overruled.

### 3. The ALJ's Step Three analysis

Plaintiff alleges that the ALJ erred by finding that his severe back impairment does not meet or equal Listing 1.04(A) for disorders of the spine, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. (Doc. 14 at 14-22; Doc. 22 at 4-5). Listing 1.04(A) provides:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

(*Id.*).  Thus, to satisfy Listing 1.04(A), plaintiff must demonstrate: (1) neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3) motor loss (atrophy with associated muscle weakness or muscle weakness); (4) sensory or reflex loss; and (5) positive straight leg raise test, in both the sitting and supine positions.  In addition, the regulations require that the abnormal findings must be established over a period of time: "Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00D.

The ALJ found that Listing 1.04(A) was not met here because the record did not demonstrate "compromise of a nerve root (including the cauda equina) or the spinal cord" with "(A) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, or motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and positive straight-leg raising."  (Tr. 18).  Plaintiff alleges that the ALJ's finding is not substantially supported because the ALJ failed to consider relevant objective findings.  Plaintiff alleges that the following diagnostic tests show compromise of a nerve root resulting from a disorder of the spine: (1) a March 31, 2003 lumbar spine MRI showing "L5-S1 shallow leftward disc displacement resulting in effacement of the descending S1 nerve rootlet without evidence of posterior displacement" and "L4-L5 disc

22

displacement resulting in minimal asymmetric left preforaminal and left lateral canal encroachment" (Tr. 546); and (2) a November 13, 2009 MRI showing a "mild disc bulge L4-5 with borderline contact of exiting left L4 nerve root." (Tr. 326, 337).

Plaintiff is required to produce evidence that all of the criteria of Listing 1.04(A) are satisfied, which he failed to do. Plaintiff points to no evidence of nerve root compression in the record. The MRI reports do not include a diagnosis of nerve root compression. (Tr. 326-27, 337, 546-47). In fact, Dr. Ian P. Rodway, M.D., who evaluated plaintiff for back and right lower extremity pain on January 6, 2010, reported that plaintiff's 2009 MRI "show[ed] no obvious nerve compression." (Tr. 326). Dr. Rodway's report, the 2003 and 2009 MRI results, and December 2008 MRI results showing "non-compressive disc degeneration with broad based disc displacement at L3-4" and "disc degeneration with a shallow disc protrusion causing borderline central stenosis and mild bilateral foraminal narrowing without nerve root compression" at L4-5 (Tr. 321), substantially support the ALJ's finding that plaintiff's back impairment did not satisfy Listing 1.04(A).

Plaintiff has not shown that the ALJ erred by failing to properly evaluate his severe back impairment under the criteria applicable to a spinal disorder. The ALJ's finding that plaintiff does not satisfy Listing 1.04(A) for disorders of the spine is supported by substantial evidence. Plaintiff's third assignment of error should be overruled.

### III. This matter should be reversed and remanded

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to

benefits as of his alleged onset date. *Faucher v. Secretary of H.H.S.,* 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for further proceedings, including reweighing of the medical opinion of treating psychologist Dr. Lester in accordance with the treating physician rule and eliciting of additional vocational evidence as warranted.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and the matter be **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: _4/6/16_

Karen L. Litkovitz
United States Magistrate Judge

24

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

RALPH EDWARD FITHEN,                          Case No. 1:15-cv-213
    Plaintiff,                                Dlott, J.
                                               Litkovitz, M.J.

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.  This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).